[No. 27582.   Department Two.   February 6, 1940.]

HAZEL MCDONALD, *Respondent,* v. ALFRED GODDARD, *Appellant.*[1]

[1]Reported in 98 P. (2d) 1074.

E. A. *Cornelius*, for appellant.

*Gleeson & Gleeson*, for respondent.

STEINERT, J.—Plaintiff brought this suit to recover the balance of compensation alleged to be due her, under the minimum wage law, for services performed by her at a beauty culture school during a specified period. Upon a trial without a jury, the court found that plaintiff was entitled to recover additional pay for a portion of the period designated and entered judgment accordingly. The defendant has appealed.

The questions upon the appeal are (1) whether respondent's status with reference to the beauty school, during the particular time, was that of a student or that of an instructor; and (2), if it was that of an instructor, whether or not the activities in which respondent was then engaged came within the scope of an order promulgated by the industrial welfare committee of the department of labor and industries, fixing a minimum wage for an experienced operator in the beauty culture business.

At the times pertinent to this controversy, appellant, Alfred Goddard, having his main office in Seattle, conducted two beauty schools in Spokane. One was known

as the Moler Beauty School, and the other as the Spokane Beauty School, each being operated as a separate and distinct business having its own local manager.

A "school," as defined in the act relating to the practices of hairdressing and beauty culture (Laws of 1937, chapter 215, p. 1041 *et seq.*, Rem. Rev. Stat. (Sup.), § 8278-1 [P. C. § 427-51] *et seq.*), is an institution of learning devoted exclusively to the instruction of students in those practices. An "instructor" is defined as a person who gives instruction in such practices *in a school*. The act also requires that each school shall at all times maintain one instructor for each ten students, or fraction thereof, and that no school shall have less than two instructors at any time.

Appellant regularly employed two instructors, one of whom was manager, at each of the schools. Courses of instruction upon various subjects, including that of shop management, were given. Through newspaper advertisement offering reduced rates, it procured customers who would permit the students to serve them, under the supervision and direction of an instructor. As permitted by the act (Rem. Rev. Stat. (Sup.), § 8278-3 [P. C. § 427-53] (h), Laws of 1937, chapter 215, p. 1043, § 3(h)), the student, after completing four hundred hours of instruction and practice and after attaining a required proficiency, received a certain percentage of the amount paid by the customer whom she served. Instructors received no percentage of such charges, but were paid fixed wages, ranging from eighteen to twenty-five dollars per week.

In July, 1937, respondent, a married woman, having completed a ten-months' course of instruction at the Moler school and having passed the required state examination, was issued a license as a beauty *operator*. An "operator" is defined by the act as a person of the age of eighteen years or over who has been licensed to

practice *hairdressing and beauty culture* under the direct supervision and direction of a manager. The operator's license, however, did not qualify respondent as a *haircutter or as an instructor.*

On October 6, 1937, respondent, desiring to prepare herself as a ladies' haircutter and also as a school instructor, with the view of ultimately obtaining a position of manager of a beauty school, entered into a written contract with appellant and enrolled as a student in those courses at the Moler school. Although the contract provided for a six months' course, it appears from the evidence that, on November 2, 1937, the state issued to her a license as an instructor. Her success in obtaining that license so quickly is apparently accounted for by the fact that, while taking the "operator's" course, she also received instruction and gained experience required by an instructor.

On January 24, 1938, respondent obtained a state license as "females' haircutter." Thus, it will be noted, she had then obtained three separate and distinct licenses as a result of her studies at the Moler school.

During the period from October 6, 1937, to January 24, 1938, while respondent was taking the second, or combined, course, she did not work as an operator, but, with the exception of the time spent in the course on haircutting, was engaged in instructing students who were taking the operators' course at the school. In her complaint, she sought to include that time as part of her alleged employment as an instructor. The court, however, held that, during that particular period, she was not actually an instructor, but was merely "learning to be an instructor," and therefore disallowed the proportionate part of her claim. Respondent has not appealed from the judgment limiting her claim, and hence no question on that score is presented here.

On January 24, 1938, appellant's bookkeeper and secretary in Spokane handed respondent an envelope containing five dollars, with the explanation that, in a conference had by her with Mr. Goddard, he had expressed surprise on learning that respondent was not being paid anything and had also intimated that an effort would be made to give her a better position in Seattle. At the same time, the secretary complimented respondent upon her efficiency and told her that she would make a good manager of a school, which was the position that respondent was desirous of obtaining.

Until February 5, 1938, respondent continued to do the work of an instructor at the Moler school, and regularly received the sum of five dollars per week. She was then transferred to the Spokane Beauty School, where she continued to do the same kind of work, holding classes regularly, and received the same amount of pay until July 4th. At that time, she demanded a raise in pay, and thereafter received $13.20 per week, except for one week when she was paid $15. In the early part of August, she became dissatisfied and voluntarily severed her connection with appellant and the school. The following month, she began this action.

Appellant's first contention is that, throughout the entire period from October 6, 1937, to August 6, 1938, respondent was merely a student taking an instructor's course under the provisions of her contract. The court, however, found that the contract had been canceled on January 24, 1938, and that, from that day forward, respondent had been employed by appellant as an instructor.

Although much can be said for appellant's contention, we believe that the evidence and the reasonable inferences to be drawn therefrom amply support the finding of the court.

■ Appellant's second contention is that, in any event, the order promulgated by the welfare committee did not make the minimum wage law applicable to instructors in beauty schools. We are constrained to agree with that contention.

The act providing minimum wages for women is found in chapter 174, Laws of 1913, p. 602 (Rem. Rev. Stat., §§ 7623-7640 [P. C. §§ 3526-3546]). The act is too well known to require a detailed statement of its provisions. It is sufficient for present purposes to say that it includes a provision authorizing the industrial welfare commission to make investigations, hold conferences, and thereafter issue obligatory orders specifying the minimum wage for women in the particular occupation, trade, or industry affected. This court has held that the minimum wage act was not an unconstitutional restraint upon the freedom of contract, but was a reasonable exercise of the police power of the state. *Parrish v. West Coast Hotel Co.*, 185 Wash. 581, 55 P. (2d) 1083, affirmed by the United States supreme court in 300 U. S. 379, 81 L. Ed. 703, 57 S. Ct. 578, 108 A. L. R. 1330.

Pursuant to the provisions of that act, the industrial welfare committee of the department of labor and industries on July 8, 1937, promulgated an order, effective September 7, 1937, which declared:

"1. The minimum wage for an experienced operator in the Beauty Culture Industry shall be Fifteen Dollars Per Week, . . .

"3. An experienced *operator* shall be any person licensed under Chapter 215 of the Session Laws of 1937, Section 1 [2] (f).

"4. The Beauty Industry shall include Hairdressing, Manicuring, Hair Manufacturing, Massage, Marcel Waving, Permanent Waving, Cosmetology, Haircutting, *and other work ordinarily performed in what are referred to as Beauty Parlors and similar establishments.*" (Italics ours.)

It will be observed that the order expressly designates *operators* only; it does not mention instructors. The beauty culture statute does not require that a licensed instructor shall have the qualifications of a licensed operator. In fact, the provision of the statute which originally did require such qualification was vetoed. Laws of 1937, chapter 215, p. 1043, § 3 (c). Hence, an instructor may be licensed as such, whether she be an operator or not. Had the committee intended to bring instructors within the terms of its order, it should, and easily could, have done so by making express reference to them.

Respondent, however, contends that the term "similar establishments" in connection with the phrase "and other work ordinarily performed in what are referred to as Beauty Parlors" must be so construed as to bring instructors within the order. We do not think so. To put that construction upon the order is to lose sight of the distinction between a beauty school and a beauty shop, as defined in the act.

A "shop" is defined as any building or structure, or any part thereof, *other than a school,* wherein the practice of hairdressing and beauty culture is conducted. A school is, as already stated, an institution of learning devoted exclusively to the instruction and training of students in the practice of those arts. Although the work of hairdressing and beauty culture is performed in the school, it is done merely for the purpose of giving instruction and furnishing experience for the students, not for the purpose of conducting a business of hairdressing and beauty culture, catering to the general public.

Respondent, while qualified as an operator, was not employed in that capacity. She was employed as an instructor in a school. It seems obvious to us that the phrase "beauty parlors and similar establishments"

comes under the classification of "shop," as defined in the statute, and does not include schools, which occupy a distinct and different field of endeavor. The order relates to operators employed in shops, beauty parlors and similar business concerns, and not to instructors in schools or institutions of learning.

The judgment is reversed, with direction to dismiss the action.

BEALS, GERAGHTY, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—It appears from the evidence that from fifty to one hundred beauty treatments were given daily to patrons of the "institution of learning" conducted by appellant. It further appears that the patrons paid from one dollar to three dollars and fifty cents for such treatments. "Most of the beauty shops charge about the same price as they do for advance work in the beauty school."

During rush hours, respondent herself gave treatments to patrons, in addition to supervising the operations of students. To qualify as "an instructor in [the] school," respondent had to have a beauty operator's license. That the "institution" was a "similar establishment" to a "Beauty Parlor," and that it was a component part of "The Beauty Industry," in contemplation of Order No. 35 of the industrial welfare committee, seems patent to me.

I dissent.